SINGLETON SCHREIBER, LLP
Gerald Singleton (OSBN: 10955)
gsingleton@singletonschreiber.com
Zachary Pangares (OSBN: 213383)
zpangares@singletonschreiber.com
1050 SW 6th Avenue, Suite 1100
Portland, OR 97204
Tel. (503) 272-7866

SINGLETON SCHREIBER, LLP
Rich Barker (OSBN: 261423)
rbarker@singletonschreiber.com
Vanessa Waldref (OSBN: 261613)
vwaldref@singletonschreiber.com
108 N. Washington Street, Suite 603
Spokane, WA 99201
Tel. (509) 824-6222
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PENDLETON DIVISION

| | |
|---|---|
| HEIDI N. LLOYD; BRIAN C. LLOYD; BRADY B. LLOYD; and PATRICIA R. EDMUNDS;<br><br>Plaintiffs,<br><br>v.<br><br>UNION PACIFIC CORPORATION, a Utah corporation; and UNION PACIFIC RAILROAD COMPANY, a Delaware corporation,<br><br>Defendants. | Case No.:<br><br>COMPLAINT<br><br>DEMAND FOR JURY TRIAL |

Plaintiffs, by and through their undersigned counsel, hereby file the following complaint for damages ("Complaint") against Defendants Union Pacific Corporation, a Utah corporation, and

Union Pacific Railroad Company, a Delaware corporation (collectively referred to as "Union Pacific" or "Defendants").

**INTRODUCTION**

1. This Complaint arises from a series of catastrophic wildfires ignited by Union Pacific in the Columbia River Gorge and Basin in Summer 2025. Union Pacific ignited several separate fires near Cold Springs, Oregon, at approximately 2:00 PM on July 2, 2025. These fires (described herein as the "Cold Springs Fires") are just one instance in a pattern of dangerous and catastrophic wildfires ignited by Union Pacific in the Pacific Northwest, including within Washington and Oregon.




**Photograph 1.** *Map depicting the evacuation zones in Umatilla County, Oregon, due to the Cold Springs Fires.* [Apple Valley News Now]() *(captured July 2, 2025).*

2. On July 2, 2025, Union Pacific Locomotive Nos. 681, 668, 4407, and 4512 (collectively, the "Subject Train") were operating on Union Pacific's tracks along the Columbia River in Umatilla County, Oregon, during dangerous fire conditions. The Cold Springs Fires were ignited by the Subject Train. Union Pacific owned, operated, and maintained the tracks and right of way where the fires started.

3. The Cold Springs Fires started when Defendants' Subject Train emitted superheated particles and ignited dry brush and other vegetation, causing multiple fires near the

train tracks on Union Pacific's Ayer subdivision near milepost 195 of Highway 730, approximately seven miles northeast of Hermiston, Oregon. These separate fires quickly merged and spread, burning over 2,400 acres; displacing numerous residents, including several Plaintiffs; and destroying at least one residence, additional structures, and damaging additional residential and commercial properties. At least eighty-one (81) total personnel were needed to fight the fires. Local landowners also used their own heavy equipment and tractors to establish control lines and assist with containment efforts.




**Photograph 2.** *Cold Springs Plaintiffs' home burning, with Union Pacific Tracks in the foreground. Apple Valley News Now (captured July 2, 2025).*

## JURISDICTION & VENUE

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states and the matter in controversy as to each Plaintiff exceeds the sum of $75,000, exclusive of interest and costs.

5. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because this is the judicial district where a substantial part of the events and omissions giving rise to Plaintiffs'


SINGLETON SCHREIBER, LLP
1050 SW 6th Avenue, Suite 1100
Portland, OR 97204
Tel. (619) 771-3473

claims occurred, and in which the properties that are the subject of this action are situated.

6. Union Pacific's ignition of fires along the Columbia River occurred in Umatilla County in the District of Oregon. Venue is proper in the Pendleton Division because "[a] substantial part" of the pattern of "events or omissions giving rise to the claim[s] occurred" in Umatilla County, Oregon, which corresponds with the Pendleton Division. *See* LR 3-2.

## PARTIES

7. At all times relevant to this Complaint, Plaintiff Heidi N. Lloyd rented and resided at 34156 E Walls Rd, Hermiston, Oregon 97838, real property located within the area burned by the Cold Springs Fires in Umatilla County, Oregon, and held a possessory interest therein. She was present in the home when the fire ignited, was surrounded by flames, and had to be rescued by firefighters. As a direct result of the Cold Springs Fires, she suffered severe emotional distress, the complete loss of all of her personal property (including her vehicle), the death of multiple pets, the destruction of her home, severe smoke inhalation that exacerbated her asthma, displacement from her long-term housing, and an increase in rent and utility cost in her new home, together with economic and non-economic damages in an amount exceeding $75,000, exclusive of interest and costs. Plaintiff Heidi N. Lloyd had no renters' insurance covering her personal property.

8. At all times relevant to this Complaint, Plaintiff Brian C. Lloyd rented and occupied real property located at 34156 E Walls Rd, Hermiston, Oregon 97838, within the area burned by the Cold Springs Fires in Umatilla County, Oregon, and held a possessory interest therein. He was not present at the property when the fire ignited. As a direct result of the Cold Springs Fires, he suffered the destruction of a farm he had been building on the property over the preceding year, the loss of all of his personal property, including irreplaceable items of sentimental value, the death of pets, the loss of his long-term, affordable housing arrangement and resulting increased housing costs, and forced relocation approximately 30 miles away that disrupted his community ties and employment, together with economic and non-economic damages in an amount exceeding $75,000, exclusive of interest and costs. Plaintiff Brian C. Lloyd's renters' insurance provided


SINGLETON SCHREIBER, LLP
1050 SW 6th Avenue, Suite 1100
Portland, OR 97204
Tel. (619) 771-3473

only a limited payout that did not cover the full extent of his losses.

9. At all times relevant to this Complaint, Plaintiff Brady B. Lloyd rented and occupied real property located at 34156 E Walls Rd, Hermiston, Oregon 97838, within the area burned by the Cold Springs Fires in Umatilla County, Oregon, and held a possessory interest therein. He was renting a room in the home at the time of the fire and lost his housing in its complete destruction. As a direct result of the Cold Springs Fires, he suffered the loss of his housing and the destruction of his real and personal property, together with economic and non-economic damages in an amount exceeding $75,000, exclusive of interest and costs.

10. At all times relevant to this Complaint, Plaintiff Patricia R. Edmunds resided in Texas and owned real property located at 34156 E Walls Rd, Hermiston, Oregon 97838, in Umatilla County, Oregon, within the area burned by the Cold Springs Fires, and held an ownership interest therein. The property was occupied by her grandchildren, Plaintiffs Heidi N. Lloyd, Brian C. Lloyd, and Brady B. Lloyd, who rented rooms from her. As a direct result of the Cold Springs Fires, Defendants destroyed her multi-generational family home and surrounding structures, which had been in her family for three generations and more than fifty years, destroyed 2.34 acres of land including a bountiful 8,400 square foot garden, destroyed Weeping Birch trees planted in honor of Patricia's son, destroyed the personal property that remained at the home, and deprived her of the rental income she received from her grandchildren who resided there, causing economic and non-economic damages in an amount exceeding $75,000, exclusive of interest and costs.

11. At all times relevant to this Complaint, these Plaintiffs were homeowners, renters, and/or occupants of real property located in Hermiston, Umatilla County, Oregon, and had property interests located therein. The Cold Springs Fires interfered with their personal rights and interests in property and destroyed or damaged their personal and real property.

12. Defendant Union Pacific Corporation is and was, at all times relevant to this Complaint, a Utah corporation doing business in the State of Oregon, including in Umatilla County, with its primary place of business at 1400 Douglas Street, Omaha, Douglas County,


SINGLETON SCHREIBER, LLP
1050 SW 6th Avenue, Suite 1100
Portland, OR 97204
Tel. (619) 771-3473

Nebraska 68179. At all times relevant to this Complaint, Defendant Union Pacific Corporation's business activities in Umatilla County included the ownership, management, and operation of a railroad. At all times relevant to this Complaint, Union Pacific Corporation operated, governed, and controlled its subsidiaries, including Defendants Union Pacific Railroad Company, a Delaware corporation, and their agents.

13. Defendant Union Pacific Railroad Company is and was, at all times relevant to this Complaint, a Delaware corporation doing business in the State of Oregon, including in Umatilla County, with its primary place of business at 1400 Douglas Street, Omaha, Douglas County, Nebraska 68179. At all times relevant to this Complaint, Defendant Union Pacific Railroad Company's business activities in Umatilla County included the ownership, management, and operation of a railroad system.

14. Defendants Union Pacific Corporation, Union Pacific Railroad Company, and their agents are collectively referred to as "Union Pacific" or "Defendants."

## FACTUAL BACKGROUND

### A. Defendants' Railroad Operations.

15. Defendants connect twenty-three (23) states in the western two-thirds of the United States by rail, including Oregon. Defendants own, operate, maintain, and repair a railroad system that transports supplies and provides transportation to residents, businesses, schools, and industries in Oregon, including in and around Umatilla County.

16. Defendants own, operate, maintain, and repair a railway extending into Umatilla County, including a right of way, tracks, roadbed, and other improvements ("Tracks").

### B. Union Pacific Knew or Should Have Known of the Significant and Catastrophic Risk of Railroad-Caused Wildfires along the Columbia River Gorge and Surrounding Areas Prior to the Ignition of the Cold Springs Fires.

17. Railroads have a long history and pattern of igniting fires in and around the Columbia River Gorge. In Oregon alone, wildfire investigators have identified at least 40 railroad-


SINGLETON SCHREIBER, LLP
1050 SW 6th Avenue, Suite 1100
Portland, OR 97204
Tel. (619) 771-3473

caused fires in counties along the Columbia River Gorge from 2000 to 2025.[1] These include train-sparked fires in Multnomah, Hood River, Wasco, Sherman, Gilliam, Morrow, and Umatilla Counties (*i.e.*, the same region where Union Pacific ignited the Cold Springs Fires). On the Washington side of the river, just across the Oregon border, railroads have ignited 140 fires between 2008 and 2025. Of these, 21 fires were ignited in counties in or along the Columbia River Gorge.[2] The map below depicts geolocation data of the wildfires ignited in railroad rights of way in and around the Columbia Gorge:




**Photograph 3**. *Approximate geolocation data of wildfires ignited on railroad rights of way in or around the Columbia River Gorge. Data set is sourced from the Washington Department of Natural Resources and Oregon State Fire Marshals and includes approximately 90 railroad right of way wildfires.*

18. In light of this history, Union Pacific knew that the combination of near constant winds and hot, dry summer conditions created a high risk of railroad-caused wildfires in the Columbia River Gorge and surrounding area. In fact, Union Pacific has decades of notice that its activities in the Columbia River Gorge and surrounding areas create significant risks that communities and residents in these areas will be impacted by devastating wildfires ignited by railroad operations.

19. The following wildfire events, which Union Pacific ignited within the Columbia River Gorge and surrounding areas, and which were investigated by government authorities to include the Oregon Department of Forestry, the Office of State Fire Marshal, and/or designated

---

[1] *ODF Fire History 2000-2025* (2025) (https://data.oregon.gov/stories/s/ODF-Fire-History-2000-2025-Dashboard/92y3-mdk3/).

[2] Washington State Department of Natural Resources, *DNR Fire Statistics 2008*-2025 (2025) (https://geo.wa.gov/datasets/dabefcb8f03549b49bee7564d4c3c4b5_2/explore?location=47.266100%2C-120.769400%2C6)

local fire investigators, demonstrate that Union Pacific knew, or at the very least should have known, that the operation of its trains in dry, hot, windy summer conditions created a high risk of railroad-caused wildfires in the area impacted by the Cold Springs Fires.

a. On June 11, 2025, the Rowena Fires ignited near Rowena, Oregon, in the Columbia River Gorge, approximately 120 miles from the area where the Cold Springs Fires later ignited. The Rowena Fires were all ignited on or adjacent to Union Pacific owned tracks and ultimately burned over 3,600 acres, displaced over 1,500 residents, and destroyed approximately 165 structures. Wildfire investigators found the most likely cause of the fires was a Union Pacific locomotive that emitted sparks, superheated particles, or other ignition sources onto dry and highly combustible vegetation along the railroad's right of way. Multiple eyewitnesses reported observing a Union Pacific train ignite numerous spot fires along the tracks immediately before the wildfires' rapid spread. The occurrence of the Rowena Fires only three weeks before the ignition of the Cold Springs Fires provided Union Pacific with notice that perating trains thorough the Columbia River Gorge and Columbia Basin during a period of high heat, low humidity and critically dry fuel conditions created risk of igniting vegetation and causing destructive wildfires along its rail corridor.




***Photograph 4.*** Map depicting the approximate ignition points for the Rowena and Cold Springs Fires.


SINGLETON SCHREIBER, LLP
1050 SW 6th Avenue, Suite 1100
Portland, OR 97204
Tel. (619) 771-3473

b. On August 12, 2024, Union Pacific ignited a fire near Bud Draper and Roxbury Rd., in Umatilla County, Oregon, which is approximately 15 miles from the area where the Cold Springs Fires ignited. The August 12 Bud Draper fire was ignited on or adjacent to Union Pacific owned tracks. Wildfire investigators determined that the fire was likely caused by hot embers from a passing train. Following the fire, investigators ordered two Union Pacific locomotives, numbers 681 and 668, to shut down for investigation. The investigation revealed soot build-up on the exhaust top and wheels showing indications of recent heating with discoloration. Locomotives 681 and 668 are the same locomotives involved in the ignition of the Cold Springs Fires.

c. On August 20, 2021, Union Pacific ignited the Sand Station Fire near Milepost 194 on Highway 730 in Umatilla County, Oregon, along a Union Pacific rail corridor. The fire originated approximately 5 miles from the Cold Springs Fire ignition area. Wildfire investigators determined that the fire originated on or immediately adjacent to Union Pacific owned railroad tracks and was determined to have been caused by railroad operations. Investigators determined that the cause of the fire was an equipment issue associated with a passing train or other railroad equipment. The fire point of origin was identified as a burning railroad tie located within the railroad right of way. The train involved in the incident was Locomotive No. 681, the same locomotive later involved in the Cold Springs Fires and Bud Draper fire. The fire burned vegetation along the railroad right-of-way and required a multi-agency response. Fire suppression efforts were undertaken by Umatilla County Fire District No. 1, Echo Rural Fire Protection District, Umatilla Rural Fire Protection District, and the U.S. Fish and Wildlife Service.

d. On August 17, 2021, Union Pacific ignited a wildfire near 39352 Rieth Road,


SINGLETON SCHREIBER, LLP
1050 SW 6th Avenue, Suite 1100
Portland, OR 97204
Tel. (619) 771-3473

Echo, Oregon, approximately 20 miles from the area where the Cold Springs Fires ignited. The August 17 Rieth Road Fire was ignited on or adjacent to Union Pacific owned tracks. Wildfire investigators determined that the fire was caused by a passing train on Union Pacific tracks. The fire burned several acres. Ultimately, Union Pacific paid suppression costs to Echo Rural Fire District.

e. On June 27, 2021, Union Pacific ignited a wildfire near 40151 Rieth Road, Echo, Oregon, which is approximately 20 miles from the area where the Cold Springs Fires ignited. The June 27 Rieth Road Fire was ignited on or adjacent to Union Pacific owned tracks. Wildfire investigators determined the fire was likely caused by a train passing through the area. Union Pacific paid suppression costs to Echo Rural Fire District.

f. On August 1, 2019, Union Pacific ignited another fire near the Interstate 84/Interstate 82 corridor in Umatilla County, Oregon, along Union Pacific's tracks. The fire originated approximately 13 miles from the Cold Springs Fires ignition area. Wildfire investigators identified multiple ignition points along the railroad right of way, immediately adjacent to Union Pacific's tracks. Investigators determined that the likely cause of the fire was locomotive-generated debris emitted during train operations. Specifically, investigators concluded that hot debris from a passing Union Pacific locomotive likely ignited dry vegetation at multiple locations, resulting in several separate ignition points along the rail corridor. The fire breached adjacent fencing and spread beyond the railroad right of way onto both government property as well as privately owned land, destroying fencing and stored materials. Multiple fire agencies responded to suppress the fire, including Umatilla County Fire District No. 1, Oregon Military Department Fire, Umatilla Rural Fire Protection District, Echo Fire Department, and other cooperating agencies.


SINGLETON SCHREIBER, LLP
1050 SW 6th Avenue, Suite 1100
Portland, OR 97204
Tel. (619) 771-3473

g. On June 12, 2019, Union Pacific ignited multiple fires near Highway 730 and North Ott Rd., in Hermiston, Oregon, approximately 5 miles from the area where the Cold Springs Fires ignited. The Highway 730 Fires were ignited on or adjacent to Union Pacific owned tracks. Wildfire investigators determined that the fires were caused by mechanical issues or hot debris emitted from a Union Pacific locomotive. At the time of ignition, the National Weather Service issued a Red Flag warning for the area, indicating elevated fire danger conditions. The train manager on duty was aware that there had been mechanical issues with the locomotive but declined the wildfire investigator's request to inspect the locomotive. Union Pacific paid suppression costs to Umatilla County Fire District No. 1.

h. On December 21, 2018, Union Pacific ignited another fire near 34891 Rieth Rd., approximately 22 miles from the area where the Cold Springs Fires ignited. The December 21 Rieth Road Fire was ignited on or adjacent to Union Pacific owned tracks and right of way. Wildfire investigators determined the fire was caused by hot debris falling from a Union Pacific train, or a spark from a Union Pacific train wheel, that ignited dry brush and other combustible vegetation along the tracks.

i. On August 2, 2016, Union Pacific ignited a fire near Rieth Rd., in Echo, Oregon, which is approximately 20 miles from the area where the Cold Springs Fires ignited. The August 2 Rieth Road fire was ignited on or adjacent to Union Pacific owned tracks. Fire investigators determined the fire to be caused by a smoldering railroad tie, and Union Pacific ultimately paid for suppression costs.

j. In June 2016, a Union Pacific train with ninety-six (96) tank cars carrying oil derailed in the Columbia River Gorge near Mosier, Oregon. As a result of the derailment, an estimated forty-two thousand (42,000) gallons of oil spilled and


SINGLETON SCHREIBER, LLP
1050 SW 6th Avenue, Suite 1100
Portland, OR 97204
Tel. (619) 771-3473

several train cars caught fire and exploded.[3] The 2016 Union Pacific oil spill occurred approximately 98 miles from the ignition point of the Cold Springs Fires.

k. On April 24, 2016, Union Pacific ignited a fire near Cunningham and Rieth Rd. in Echo, Oregon, which is approximately 18 miles from the area where the Cold Springs Fires ignited. The April 24 Cunningham Road fire was ignited on or adjacent to Union Pacific owned tracks, and Union Pacific paid suppression costs to Echo Rural Fire District.

l. On October 13, 2014, Union Pacific ignited a wildfire near Echo, Oregon in the area of Dupont and Thielsen Streets, approximately 12 miles from the area where the Cold Springs Fires ignited. This fire ignited on or adjacent to Union Pacific owned tracks. Wildfire investigators determined the cause to be train-related friction sparks or another heat source associated with railroad operations. The friction sparks in turn ignited dry grass and brush along the railroad corridor. Union Pacific paid suppression costs to Echo Rural Fire District.

m. On August 3, 2014, Union Pacific ignited a fire in the area south of Cunningham and Rieth Roads, near Pendleton, Oregon, which is approximately 12 miles from where the area where the Cold Springs Fires ignited. This fire ignited on or adjacent to Union Pacific owned tracks and wildfire investigators concluded that Union Pacific ignited dry brush and vegetation along the railroad corridor. Union Pacific called in the fire, acknowledging their railroad ties were the cause.

20. Union Pacific also knew or should have known of the risk of catastrophic wildfires

[3] Special Report: Oil trains in the Gorge: Are we ready for a spill?. Chuck Thompson, Oregon Capital Chronicle. https://oregoncapitalchronicle.com/2024/03/20/oil-trains-in-the-gorge-are-we-ready-for-a-spill/ (last visited July 24, 2026).

in the Columbia River Gorge and surrounding counties based on other recent catastrophic wildfires impacting the Cold Springs and surrounding area. Long before the Cold Springs Fires, the Columbia River Gorge and surrounding areas experienced a longstanding and widely known pattern of severe summer wildfires covering vast acreage. This history put Union Pacific on clear notice that catastrophic fire spread was a recurring and foreseeable risk under hot, dry, and windy conditions. By way of example, the following large and severe wildfires occurred in the years preceding the Cold Springs Fires in the Columbia River Gorge and surrounding counties.

a. In July 2024, the Microwave Tower Fire started approximately five (5) miles west of Mosier, Oregon and burned approximately 1,300 acres. The fire prompted Level 1 and Level 2 evacuation notices for areas in Wasco and Hood River counties.[4] The 2024 Microwave Tower Fire ignited approximately 104 miles from the ignition point of the Cold Springs Fires.

b. Also in July 2024, the Larch Creek Fire ignited near The Dalles, Oregon, burning 2,500 acres in Wasco County. Residents in the area were subject to Level 1, 2 and 3 evacuation notices.[5] The 2024 Larch Creek Fire ignited approximately 98 miles from the ignition point of the Cold Springs Fires.

c. On July 2, 2023, the Tunnel 5 Fire ignited near Tunnel 5 and Railroad Milepost 70 in Skamania County, Washington, within the Columbia River Gorge, approximately 111 miles from the area where the Cold Springs Fires later ignited. The Tunnel 5 Fire originated on or immediately adjacent to BNSF Railway[6] owned tracks and ultimately burned more than 500 acres and

---

[4] Microwave Tower Fire, *Wildfire Trackers*, https://wildfiretrackers.com/f/fires/or95s-microwave-tower-fire-fcc7 (last visited July 29, 2026).

[5] OSFM Mobilizes Resources to Larch Creek Fire in Wasco County, Or. State Fire Marshall (July 9, 2024), https://apps.oregon.gov/oregon-newsroom/OR/OSFM/Posts/Post/larch-creek-conflagration.

[6] Although Union Pacific did not ignite the Tunnel 5 fire, its close proximity to the Gorge and the fact that the Tunnel 5 fire was ignited by another railroad further put Union Pacific on notice of the catastrophic risks of railroad fires in the region. Union Pacific knew or should have known of these incidents, yet failed to take proper


SINGLETON SCHREIBER, LLP
1050 SW 6th Avenue, Suite 1100
Portland, OR 97204
Tel. (619) 771-3473

destroyed multiple structures, including several residences. Investigators determined that a westbound BNSF train ignited multiple fires along the railroad right of way, with at least three separate ignition points identified over an approximately 690-foot stretch east of Tunnel 5. It was concluded that the fire was caused by railroad operations, including locomotive exhaust particles, wheel-lubrication system debris, and other train-generated ignition sources that were emitted into dry and highly combustible vegetation adjacent to the tracks. Washington DNR investigators further noted that BNSF maintenance activities had reportedly ignited an additional fire in the same vicinity only days before the Tunnel 5 Fire.

d. In August 2022, the Miller Road Fire ignited near Maupin, Oregon. That fire burned more than 10,847 acres across Wasco County and was 100 miles from the ignition points of the Cold Springs Fires.[7]

e. In July 2018, another devastating wildfire ignited near The Dalles, Oregon. The resulting Substation Fire burned more than 78,000 acres and claimed one civilian life due to exposure to flames and smoke.[8] This Substation Fire ignited approximately 90 miles from the start point of the Cold Springs Fires. That same month, the South Valley Fire ignited near Dufur, Oregon, burning over 20,026 acres, forcing 500 people to evacuate, and consuming three residences.[9]

---

precautions to avoid future similar incidents. This pattern and practice of igniting prior wildfires further provided Union Pacific with notice that train operations could ignite combustible vegetation and cause wildfires along rail corridors in the Columbia Gorge and surrounding area.

[7] Final Update: Miller Road Fire 95% Contained, 10,847 Acres Burned, Or. State Fire Marshal (Aug. 7, 2022), https://osfminfo.org/final-update-miller-road-fire-95-contained-10847-acres-burned/.

[8] Substation Fire Mostly Contained, KGW8 (July 23, 2018), https://www.kgw.com/article/news/local/wildfire-prompts-level-3-go-evacuation-issued-for-southeast-side-of-the-dalles/283-574914450.

[9] South Valley Fire in Full Mop-Up, 40 Percent Contained, KGW8 (Aug. 5, 2018), https://www.kgw.com/article/weather/wildfires/crews-battling-wildfire-southwest-of-dufur-evacuations-

The 2018 South Valley Fire ignited approximately 94 miles away from the location of the 2025 Cold Springs Fires.

f. In June 2018, the Boxcar Fire in Wasco County burned more than 100,000 acres.[10] The 2018 Boxcar Fire ignited approximately 99 miles from the ignition point of the Cold Springs Fires.

g. In September 2017, the Eagle Creek Fire burned around 50,000 acres near Multnomah Falls, Oregon. This fire ignited after a teenager threw a firecracker into the Columbia River Gorge during a burn ban. The fire spread across the river into Washington, and it resulted in mandatory evacuations for over 400 homes.[11] The 2017 Eagle Creek Fire ignited approximately 126 miles from the ignition point of the Cold Springs Fires.

h. In August 2014, lightning ignited a fire (also named the Rowena Fire), burning approximately 3,500 acres in the Rowena, Oregon area. The fire forced hundreds of people to evacuate their homes.[12] The 2014 Rowena Fire ignited approximately 98.5 miles from the ignition point of the Cold Springs Fires.

21. Union Pacific's actions further compounded the risk of severe and catastrophic wildfires in and around the Columbia Gorge prior to the 2025 Cold Springs Fires. In 2019, Union Pacific laid off approximately 195 employees at the Hinkle Rail Yard in Hermiston, closing the yard's supply warehouse and mechanical shop in 2019. Upon information and belief, the layoffs and closing impacted Defendants' rail and maintenance operations—limiting Union Pacific's resources for mitigating wildfire risk and resulting in Union Pacific operating improperly

---

ordered/283-579445373.

[10] Zach Urness, Oregon Wildfires: Boxcar Fire Almost 100 Percent Contained After Burning 100,000 Acres, Statesman J. (June 27, 2018), https://www.statesmanjournal.com/story/news/2018/06/27/oregon-wildfires-boxcar-fire-almost-100-percent-contained/738485002/.

[11] Ginger Heath, The 2017 Eagle Creek Fire (Apr. 25, 2024), https://storymaps.arcgis.com/stories/db264e90d97f43e68e9d1beff3e11dcc.

[12] Stuart Tomlinson, Rowena Wildfire Threatening up to 170 Homes Between Mosier and The Dalles, Oregonian (Aug. 6, 2014), https://www.oregonlive.com/wildfires/2014/08/the_rowena_fire_is_threatening.html.


SINGLETON SCHREIBER, LLP
1050 SW 6th Avenue, Suite 1100
Portland, OR 97204
Tel. (619) 771-3473

maintained Trains and Tracks in and around the Columbia River Gorge and surrounding area, which are areas Union Pacific knows are highly susceptible to wildfires.

**C. Union Pacific's railroad operations ignited the Cold Springs Fires on July 2, 2025.**

22. The combination of strong winds, low relative humidity, and hot temperatures resulted in the National Weather Service issuing "red flag warnings" of extreme wildfire risk prior to July 2, 2025, in the Columbia River Gorge and surrounding area, including in Umatilla County. These risks were exacerbated by Union Pacific's prior reduction in operations at the Hinkle Railyard.

23. Despite the extreme risk of wildfires in Umatilla County before and on July 2, 2025, and the history of wildfires, including railroad-caused fires in this area, Union Pacific continued its pattern of operating their Trains in an area with dry, overgrown vegetation on and around its Tracks, including through a right of way that is to be maintained by Union Pacific.

24. Several eyewitnesses observed Union Pacific's Subject Train emit hot debris, particles, emissions, and/or other materials which ignited multiple fires on or near Defendants' Tracks in Umatilla County. Witnesses reported seeing at least <u>six separate wildfire ignitions</u> sparked over the course of several miles along Defendants' tracks. Some of these wildfire starts spread and caused damage in Umatilla County. According to eyewitnesses and video surveillance footage, fires ignited adjacent to the Union Pacific tracks immediately as the Subject Train passed, leaving multiple plumes of smoke in the train's wake. The fire investigator for Umatilla County concluded that these fires were caused by sparks and hot debris emitted from the Defendants' locomotives and/or railcars—including from the locomotives' exhaust systems and from the wheels, brakes, and bearings of the Subject Train—each of which is subject to federal inspection, maintenance, and equipment standards under 49 C.F.R. Parts 229 and 232. Notwithstanding that the Subject Train sparked a wildfire, the Subject Train continued to operate in a dangerous and reckless manner, igniting additional wildfires, until a firefighter on the scene of the previously started fires formally requested a track shutdown.


SINGLETON SCHREIBER, LLP
1050 SW 6th Avenue, Suite 1100
Portland, OR 97204
Tel. (619) 771-3473

25. Union Pacific crew members were reticent to let Fire Marshal Goff inspect locomotives 668, 681, 4407, and 4512. In his report, Fire Marshal Goff noted that Union Pacific employees were particularly resistant to investigation of the lead locomotive of the Subject Train. Union Pacific crew members moved the named locomotives before their inspection, and Goff was not able to inspect 4407 because Union Pacific crew members refused to shut the locomotive down to allow Goff to safely perform an inspection. Goff recorded that the Union Pacific employees behaved in "typical behavior," which meant they provided no information and failed to respond to Umatilla County Fire District records requests sent in July 2025, making it impossible for Fire Marshal Goff to identify any trains that passed through the Cold Springs Fires area prior to the fire.

26. Three eyewitnesses, including a former Union Pacific employee, observed smoke and fire rising from Union Pacific's tracks in the wake of the Subject Train passing near Marks Road. Despite requirements that railroad employees alert fire stations of any fires, Union Pacific Railroad employees did not report the Cold Springs Fires to local emergency responders. The Union Pacific crew members reported that they failed to see smoke rising from the Subject Train's tracks as it ascended a grade, stating that they only noticed smoke approximately one-half mile west of East Walls Road. Instead of Union Pacific crew members, other eyewitnesses were the first to call 911 and report the fires.

27. The fires, fueled by high temperatures, dry conditions, sustained winds of 20-30 miles per hour and powerful wind gusts of up to 35 miles per hour, quickly spread and converged to form the Cold Springs Fires.

28. Plaintiff Heidi Lloyd was inside her family's legacy home when the fire ignited. She was alone and asleep when the fire began and barely escaped. She heard an explosion and woke up. By the time she awoke, Plaintiff Heidi Lloyd's home was surrounded by flames. The heat from the flames burned intensely, and the smoke, soot, and ash entered her lungs causing heavy and difficult breathing. She had to be rescued by firefighters. She was able to save one of


SINGLETON SCHREIBER, LLP
1050 SW 6th Avenue, Suite 1100
Portland, OR 97204
Tel. (619) 771-3473

her pets, but several others, as well as the family's legacy home, 50 years of family history, and virtually all of their personal property were destroyed in the Cold Springs Fires.

29. Video obtained from a nearby business shows the Subject Train igniting at least two fires as it passes approximately a quarter mile from the Cold Springs Plaintiffs' property.



**Photograph 5.** *Image from video depicting multiple fire starts on July 2, 2025 approximately one quarter mile from the Cold Springs Plaintiffs' legacy family home. Apple Valley News Now's YouTube channel (recorded on July 2, 2025). The fire starts are highlighted in the yellow circles.*

**D. Plaintiffs have suffered substantial harms as a result of the Cold Springs Fires.**

30. The Cold Springs Fires caused Plaintiffs to evacuate and be displaced from their home and property. Due to the Fires, Plaintiffs suffered, and will continue to suffer, substantial harms, including, but not limited to, the following:

a. Damage to, destruction of, and loss of real and personal property, including property that was unique and/or had unique personal value to Plaintiffs;

b. Annoyance, inconvenience, disturbance, and loss of use and enjoyment of

property;

c. Diminution in the fair market value of their property;

d. Loss of business income and business goodwill;

e. Out-of-pocket expenses directly and proximately incurred because of the fire;

f. Evacuation and additional living expenses;

g. Lost wages;

h. Lost pets;

i. Lack of clean water as a result of wildfire and related suppression efforts;

j. Physical injury, including, but not limited to, smoke inhalation and the exacerbation of medical conditions, including but not limited to asthma;

k. Discomfort, fear, upset, mental and emotional distress; and

l. Investigation costs, litigation costs, and attorney fees.

**E. After the Cold Springs Fires, Union Pacific Trains Continued Igniting Wildfires in and around the Columbia River Gorge.**

31. Following the Cold Springs Fires, Union Pacific continued its pattern and practice of igniting wildfires in the area in and around the Columbia River Gorge. The occurrence of these fires, in the aftermath of the Cold Springs Fires—along with the history outlined above of similar fire incidents—demonstrates how Union Pacific continues to dangerously operate locomotives prone to start fires in the Columbia River Gorge and Columbia Basin during periods of extreme fire danger, high temperatures, low humidity, and strong winds.

a. On August 3, 2025, a rail vehicle fire occurred near 19998 Cedar Springs Lane and Highway 19 in Gilliam County, Oregon, within a railroad yard operated along the Union Pacific rail corridor. The fire originated approximately 55 miles from the Cold Springs Fires ignition area. The incident involved an open-top rail container carrying wood debris, where combustible material within the rail car ignited. Fire investigators classified the incident as an unintentional rail


SINGLETON SCHREIBER, LLP
1050 SW 6th Avenue, Suite 1100
Portland, OR 97204
Tel. (619) 771-3473

vehicle fire and determined that the ignition source was a hot or smoldering object that came into contact with wood chips or similar wood debris being transported in the container.

b. On January 22, 2026, a fire ignited at a Union Pacific Railroad switch station near 2500 Northwest Westgate in Pendleton, Oregon, adjacent to the Eastern Oregon Correctional Institution ("EOCI"). The fire originated approximately 30 miles from the Cold Springs Fires ignition area. Pendleton Fire Department personnel were dispatched after reports that flames were visible from EOCI. Upon arrival, responders observed flames and smoke emanating from a railroad switch station located west of the EOCI access road. The fire originated within railroad infrastructure and was classified as a transportation-related train or rail fire occurring outdoors on railway property. Despite requests from emergency responders, dispatch was unable to contact a responsible Union Pacific representative during the incident.

32. The occurrences of these fires just weeks after the Cold Springs Fires demonstrates Union Pacific continued operating locomotives through the Columbia River Gorge and Columbia Basin during periods of extreme fire danger, high temperatures, low humidity, and strong winds, which created a substantial risk of igniting multiple wildfires along its railroad right of way.

33. The repeated, decade-long history of large wildfires in and around the same region made the danger of ignition, rapid spread, and resulting property loss not merely possible, but well known, substantial, and entirely foreseeable to Union Pacific. These subsequent fires ignited by Union Pacific reflect that Union Pacific continues to ignore wildfire risks, notwithstanding the devastating consequences of wildfires, especially train-caused fires, in and around the Cold Springs areas.


SINGLETON SCHREIBER, LLP
1050 SW 6th Avenue, Suite 1100
Portland, OR 97204
Tel. (619) 771-3473



**Photograph 6.** *Damage caused by the Cold Springs Fire near the Columbia River in Hermiston, Oregon. Facebook.com*

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF – NEGLIGENCE

34. Plaintiffs reallege and incorporate the foregoing allegations as if fully set forth herein.

35. Defendants have a duty of care to maintain, inspect, and operate their railways with the utmost care and prudence, because the operation of a railway exposes the public to serious accident or death.

36. Operating a railroad is a matter of public concern. Defendants owe a duty to the public to operate their railroad in a safe and prudent manner in compliance with Oregon state law and federal regulations.

37. Defendants owed Plaintiffs a duty to exercise the care that a reasonable person of ordinary prudence would exercise in the same or similar circumstances, including the duty to avoid

creating unreasonable risks of harm to persons and property in the vicinity of their railroad operations.

38. Plaintiffs were property owners and residents in the fire zone, precisely the class of persons that federal railroad safety regulations are designed to protect. Federal railroad safety regulations, including but not limited to 49 CFR Parts 213, 229, 232, and 271, were enacted to protect persons like Plaintiffs who live and own property near railroad operations from the specific type of harm that occurred in this case.

39. Under 49 CFR Part 232, Defendants have a duty, among other things, to inspect, maintain, repair, and operate their Trains, to ensure that they are in proper condition and safe to operate without unnecessary peril to life and limb. This duty establishes a federal standard of care, and to the extent Plaintiffs' claims concern the condition or maintenance of Defendants' locomotives or locomotive equipment, those claims are premised on Defendants' failure to comply with the federal standard of care established by the Locomotive Inspection Act and its implementing regulations, and by 49 C.F.R. Parts 229 and 232, and not on any independent state-law standard, and are therefore preserved under 49 U.S.C. § 20106(b)(1)(A).

40. Under 49 CFR Part 213, Defendants have a duty, among other things, to inspect and maintain their Tracks, including managing and maintaining vegetation on or near their Tracks, so as to prevent a fire hazard. Specifically, 49 C.F.R. § 213.37 requires that vegetation on railroad property on or immediately adjacent to the roadbed be controlled so that it does not, among other things, become a fire hazard to track-carrying structures or combustible material adjacent to the right of way. At minimum, Defendants had a duty to control vegetation in compliance with this federal standard.

41. In addition, consistent with federal regulations and industry practices and procedures, Defendants have the duty to:

a. Conduct prompt, proper, and frequent inspections of their locomotives and railcars, including the Subject Train;


SINGLETON SCHREIBER, LLP
1050 SW 6th Avenue, Suite 1100
Portland, OR 97204
Tel. (619) 771-3473

b. Manage vegetation on or near their Tracks so as not to create a fire hazard;

c. Operate, maintain, and/or repair their locomotives, and railcars, including particularly the Subject Train, in such a way as to ensure their safe and proper operation, especially under dry, windy conditions where there is a high risk of wildfires;

d. Use appropriate and available technology, such as "track warning detectors"; appropriately place such detectors to ensure timely alerting of any potential problems; implement appropriate policies for the use of such detectors including, but not limited to, setting appropriate alarm thresholds and criteria for determining when a potentially dangerous condition exists; and ensure that such detectors are timely and properly inspected and maintained;

e. Ensure a proper mechanism for stopping or slowing malfunctioning locomotives and/or railcars, including the Subject Train, in a timely manner to avoid ignition of a fire;

f. Hire, train, manage, oversee, and supervise their officers, agents, and employees, including, but not limited to, the train engineers, conductors, brake operators, and dispatchers, concerning the operation of the Subject Train beginning on or before July 2, 2025;

g. Properly determine the adequacy and skill of their officers, agents, and employees, including, but not limited to, the train engineers, conductors, brake operators, and dispatchers concerning the operation of their Subject Train beginning on or before July 2, 2025;

h. Ensure that their officers, agents, and employees, including the train engineers and dispatchers, were properly instructed and trained regarding the risk of wildfires, and concerning safety and emergency procedures if a fire were ignited along their Tracks beginning on or before July 2, 2025;


SINGLETON SCHREIBER, LLP
1050 SW 6th Avenue, Suite 1100
Portland, OR 97204
Tel. (619) 771-3473

i. Develop and implement a wildfire mitigation plan;

j. Timely implement an emergency response plan in the event of fire ignition on or near their Tracks; and

k. Contain the spread of fire on or near their Tracks.

42. Defendants established a special relationship with the Plaintiffs through Defendants' construction, maintenance, and operation of their trains in close proximity to Plaintiffs' homes. Defendants further held out that the Subject Train and Tracks were safe and trustworthy, including by claiming that Union Pacific is "dedicated to . . . ensuring our operations are safe and efficient for everyone." The community impacted by the Cold Springs Fires, including Plaintiffs, have relinquished control of land adjacent to the Columbia River to Defendants, who exercise independent judgment over their railway operations that deeply impact neighboring residents' livelihoods. Because of this relationship and Defendants' knowledge of increased risks of operating a railroad in the Columbia River Gorge and surrounding area during dry, windy, and hot summer months, Defendants had an enhanced duty to operate and maintain its trains and tracks in a safe manner. Defendants also had an enhanced duty of care in the selection, training, supervision, and retention of their staff operating and maintaining Defendants' Subject Train and Tracks.

43. Upon information and belief, Defendants acted negligently, carelessly, and/or recklessly and created a foreseeable risk of the Subject Train igniting and spreading a pattern and series of wildfires on or before July 2, 2025, and breached their duty of care to Plaintiffs in one or more of the following ways:

a. Failing to properly inspect, repair, and maintain the Subject Train on or before July 2, 2025;

b. Failing to properly manage vegetation on or near their Tracks on or before July 2, 2025 to mitigate the risk of wildfire. In doing so, Defendants violated the vegetation-control standard set forth in 49 C.F.R. § 213.37 by permitting dry,


SINGLETON SCHREIBER, LLP
1050 SW 6th Avenue, Suite 1100
Portland, OR 97204
Tel. (619) 771-3473

dead, and overgrown grasses, brush, and other combustible vegetation to accumulate on and immediately adjacent to the roadbed at and near the ignition points, where it constituted a fire hazard and served as the fuel that Defendants' sparks and hot debris ignited. Specifically, dry, dead, and overgrown grasses, brush, and other combustible vegetation were permitted to accumulate within and immediately adjacent to Defendants' right of way at and near the ignition points, and that vegetation was the fuel that Defendants' sparks and hot debris ignited, as reflected by the charring immediately adjacent to the Tracks.

c. Failing to operate, maintain, and/or repair the Subject Train in a manner that would ensure its safe and proper operation, and would mitigate the risk of wildfire;

d. Failing to maintain vigilant lookout during the operation of the Trains on July 2, 2025;

e. Failing to immediately notify train dispatchers about fires observed along their Tracks on July 2, 2025;

f. Failing to use, and/or respond to messages from, its "track warning detectors" along the Tracks, so as to prevent and/or rapidly respond to a fire;

g. Failing to appropriately place such detectors along the Tracks in Umatilla County from on or before July 2, 2025, to ensure timely alerting of any potential problems;

h. Failing to implement appropriate policies for the use of such detectors in Umatilla County (including, but not limited to, setting appropriate alarm thresholds and criteria for determining when a fire or other potentially dangerous condition exists), and failing to ensure that such detectors were timely and properly inspected and maintained;

i. Failing to properly calibrate, maintain, test, and operate the brake systems on


SINGLETON SCHREIBER, LLP
1050 SW 6th Avenue, Suite 1100
Portland, OR 97204
Tel. (619) 771-3473

the Subject Train;

j. Failing to adequately hire, train, manage, oversee, and supervise their officers, agents, and employees, including but not limited to the train engineers, conductors, brake operators, and dispatchers involved in the operation of the Subject Train on July 2, 2025;

k. Failing to properly determine the adequacy and skill of their officers, agents, and employees, including but not limited to, the train engineers, conductors, brake operators, and dispatchers involved in the operation of the Subject Train on July 2, 2025;

l. Failing to adequately ensure that their officers, agents, and employees, including the train engineers and dispatchers, were properly instructed and trained regarding the risk of wildfires and concerning safety and emergency procedures in the event of a fire along their Tracks on July 2, 2025;

m. Failing to properly develop and implement a wildfire mitigation program;

n. Failing to implement an emergency response plan in the event of fire on or near their Tracks on July 2, 2025; and

o. Failing to promptly contain the spread of fire on or near their Tracks on July 2, 2025.

44. In the alternative, and without limiting the foregoing allegations of direct causation, under the doctrine of res ipsa loquitur, the ignition of multiple wildfires along Defendants' Tracks creates a strong inference Defendants acted negligently on and before July 2, 2025.

a. At the time the Cold Springs Fires ignited, Defendants' Subject Train operated on the Tracks in the general area of origin of the fire and maintained exclusive control of Defendants' trains operating along these Tracks.

b. There is no information or evidence that any individual or entity other than Defendants caused or contributed to the release or emission of superheated

particles, sparks, or other materials that ignited the Cold Springs Fires.

c. The wildfires were not caused by any voluntary action or contribution by Plaintiffs.

d. One or more wrongful acts or omissions of Defendants amounted to a breach of its duty of care to Plaintiffs by the release of superheated particles or sparks that ignited dry grasses and vegetation on or near the Tracks, causing the Cold Springs Fires.

e. After a reasonable opportunity for further investigation or discovery, Plaintiffs will likely have further evidentiary support for the inference that Defendants' negligence caused Plaintiffs' injuries.

45. Defendants' violation of safety laws and regulations constitutes negligence per se under Oregon law. The Federal Railroad Safety Act ("FRSA"), 49 U.S.C. § 20101 et seq., the Locomotive Inspection Act ("LIA"), 49 U.S.C § 20701, et seq., and their accompanying regulations are implemented to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents. These federal safety laws and regulations were enacted to protect a specific class of persons, including property owners and residents like Plaintiffs who live and own property near railroad operations, from the specific type of harm that occurred in this case, including wildfire ignition and property damage caused by railroad operations. The property damage, displacement, personal injuries, and emotional distress caused by wildfire ignition from railroad operations suffered by the Plaintiffs is precisely the type of harm these federal safety regulations were designed to prevent. Because Plaintiffs' negligence per se claims allege that Defendants failed to comply with the federal standards of care established by these federal regulations, and with plans Defendants created pursuant to them, these claims are expressly preserved under 49 U.S.C. § 20106(b)(1). Defendants' conduct violated the FRSA, the LIA, and one or more regulations, including but not limited to the following:

a. 49 C.F.R. Part 213, including but not limited to 49 C.F.R. § 213.37


SINGLETON SCHREIBER, LLP
1050 SW 6th Avenue, Suite 1100
Portland, OR 97204
Tel. (619) 771-3473

(management of vegetation on railroad property);

b. 49 C.F.R. Part 229, including but not limited to 49 C.F.R. §§ 229.7 (movement of noncomplying locomotives; condition to be safe to operate), 229.21 (daily inspection), 229.23 (periodic inspection), and 229.45 (general condition; free of conditions that endanger safety);

c. 49 C.F.R. Part 232, including but not limited to 49 C.F.R. §§ 232.103 (general train brake requirements) and 232.205 (class I brake tests); and

d. 49 C.F.R. Part 271, including but not limited to 49 C.F.R. §§ 271.101, 271.105, 271.211, and 271.213, and the risk reduction program plan Defendants created pursuant thereto, within the meaning of 49 U.S.C. § 20106(b)(1)(B);

e. 49 C.F.R. Part 220, including but not limited to 49 C.F.R. § 220.13 (railroad employees must immediately report fires observed on or along the right of way);

f. 49 C.F.R. Part 215, including but not limited to 49 C.F.R. §§ 215.11 (designated inspectors of railcars), 215.13 (pre-departure inspection of railcars), and 215.15 (periodic inspection of railcars);

g. 49 C.F.R. Part 240, including but not limited to 49 C.F.R. § 240.123 (railroad must ensure locomotive engineers are properly trained);

h. 49 C.F.R. Part 242, including but not limited to 49 C.F.R. § 242.119 (railroad must ensure conductors are properly trained);

i. 49 C.F.R. Part 245, including but not limited to 49 C.F.R. § 245.119 (railroad must ensure dispatchers are properly trained); and

j. 49 C.F.R. Part 243, including but not limited to 49 C.F.R. § 243.205 (railroad must conduct periodic oversight of safety-related railroad employees and ensure compliance with Federal railroad safety laws, regulations, and orders).

46. Defendants' failures described above created a foreseeable risk that those under


SINGLETON SCHREIBER, LLP
1050 SW 6th Avenue, Suite 1100
Portland, OR 97204
Tel. (619) 771-3473

Defendants' care, including Plaintiffs, would suffer devastating and catastrophic loss as a result of wildfires ignited by Defendants' Subject Train. Defendants also knew or should have known that their negligent conduct would create an unreasonable risk of wildfire that could spread and cause harm to persons and property like Plaintiffs.

47. Defendants violated these regulations in one or more of the following respects:

a. The Subject Train's locomotives and railcars were operated with defective or inadequately maintained equipment that emitted sparks and hot exhaust debris, in violation of 49 C.F.R. Parts 229, 232, and 215;

b. Defendants failed to control vegetation on railroad property on or immediately adjacent to the roadbed at and near the points of ignition, in violation of 49 C.F.R. §213.37; and, separately and in addition, Defendants failed to control dry and combustible vegetation elsewhere on their right of way, beyond the area immediately adjacent to the roadbed and outside the scope of § 213.37, in breach of their independent duty under Oregon common law to exercise reasonable care to keep their right of way reasonably free of combustible material;

c. Defendants failed to establish, implement, and maintain a risk reduction program and risk-based hazard management program, in violation of 49 C.F.R. Part 271;

d. In violation of 49 C.F.R. Part 229, Defendants operated locomotives that were not maintained free of conditions that endanger safety and were not properly inspected, in violation of the locomotive general-condition and inspection standards of §§ 229.7 (locomotive must be in proper condition and safe to operate), 229.45 (general condition), 229.21 (daily inspection), and 229.23 (periodic inspection);

e. Defendants failed to perform the brake tests and to maintain the brakes in the


SINGLETON SCHREIBER, LLP
1050 SW 6th Avenue, Suite 1100
Portland, OR 97204
Tel. (619) 771-3473

effective operating condition required by 49 C.F.R. §§ 232.103 and 232.205; the Subject Train's defective or dragging brakes generated sparks and heated debris;

f. Defendants failed to properly report the Cold Springs Fire once it noticed smoke rising near the Subject Train's tracks as required by 49 C.F.R. § 220.13;

g. In violation of 49 C.F.R. §§ 243.205, 240.123, 242.119, and 245.119, Defendants failed to properly train, supervise, and manage its safety-related employees, including engineers, conductors, and dispatchers, who failed to properly identify the fire igniting defect of the Subject Train, operated the Subject Train in an unsafe manner, and failed to properly identify and report the Cold Springs Fire.

48. These violations indicate a pattern of failing to inspect and keep equipment from creating fire-hazard conditions: after the August 12, 2024 Bud Draper fire, wildfire investigators ordered Union Pacific locomotives from the same set later involved in the Cold Springs Fires to shut down for inspection and documented soot build-up on the exhaust top and wheels showing indications of recent heating and discoloration, evidencing that Defendants operated, and continued to operate, locomotives that were not maintained free of fire-hazard conditions and were not properly inspected, in violation of 49 C.F.R. Parts 229 and 232.

49. The repeated ignition of fires by Defendants' trains in this same corridor—including at least forty railroad-caused fires on the Oregon side of the Columbia River Gorge between 2000 and 2025, the Bud Draper, Sand Station, Rieth Road, and Highway 730 Fires, and the post-Cold Springs fires—demonstrates that Defendants knew of these regulatory requirements and the wildfire hazard they are designed to prevent, yet consistently failed to comply with these requirements.

50. Defendants' failures were direct, proximate, and foreseeable causes of all or some of Plaintiffs' damages, as alleged above. The property damage, displacement, personal injuries,


SINGLETON SCHREIBER, LLP
1050 SW 6th Avenue, Suite 1100
Portland, OR 97204
Tel. (619) 771-3473

and emotional distress suffered by Plaintiffs were a foreseeable consequence of Defendants' negligent operation of its Subject Train in high-risk fire conditions with inadequate vegetation management and maintenance.

51. Plaintiffs each seek damages on an individual basis in amounts as shall be proven at trial. As a result and consequence of Defendants' negligence, Plaintiffs have incurred and will continue to incur economic and non-economic damages and are entitled to compensatory damages in an amount to be determined by a jury. Plaintiffs' non-economic damages are sought to compensate their personal injuries and resulting emotional harms, which are independent of any injury to property and are therefore not limited or barred by ORS 477.089.

52. In Defendants' actions and failures, Defendants acted with reckless and outrageous indifference to a highly unreasonable risk of harm and with a conscious indifference to the health, safety, and welfare of communities in the Columbia River Gorge and surrounding area, including with respect to Plaintiffs. Defendants' actions were reckless and outrageous in the following ways:

a. Defendants consciously chose to operate the Subject Train under these hazardous conditions, despite knowing of the extreme fire risk conditions on or before July 2, 2025, including red flag warnings and previous wildfire incidents caused by railroad operations in the Columbia River Gorge and surrounding area. Defendants also acted with conscious indifference to the health, safety, and welfare of Plaintiffs and other residents in the area by failing to implement adequate fire prevention measures, despite their knowledge of the propensity for their trains to ignite fires.

b. Failure to suspend operations during extreme fire conditions, despite red flag warnings and plainly hazardous weather conditions;

c. Failure to properly maintain vegetation along their Tracks to prevent fire hazards;

d. Failure to ensure adequate inspection and maintenance of the Subject Train to


SINGLETON SCHREIBER, LLP
1050 SW 6th Avenue, Suite 1100
Portland, OR 97204
Tel. (619) 771-3473

prevent ignition sources;

e. Failure to establish, implement, and follow the risk reduction program and risk-based hazard management plan required by 49 C.F.R. Part 271, and the plans Defendants created pursuant thereto, within the meaning of 49 U.S.C. § 20106(b)(1)(B);

f. Failure to take immediate action to contain the fire(s) once ignited; and

g. Failure to immediately take action to prevent additional ignitions once the Subject Train began igniting one or more fires on July 2, 2025.

53. The Defendants' conduct as alleged herein was committed with malice and/or with reckless and outrageous indifference to a highly unreasonable risk of harm to the health, safety, and welfare of communities in the Columbia River Gorge and surrounding area, including Plaintiffs. Plaintiffs are therefore entitled to twice the amount of their property and economic damages to the extent allowed under ORS 477.089(2)(b). Plaintiffs also are entitled to punitive damages against Defendants in an amount to be determined by a jury.

## SECOND CLAIM FOR RELIEF – TRESPASS

54. Plaintiffs reallege and incorporate by reference the foregoing allegations as if fully set forth herein.

55. From on and before July 2, 2025, Plaintiffs were residents and owners of real and personal property in the areas impacted by the Cold Springs Fires and thus had an exclusive possessory interest in such property.

56. Plaintiffs held the exclusive right to possession of their real and personal property, including the right to exclude others and prevent unwanted intrusions upon their property.

57. Defendants operated the Subject Train on and about July 2, 2025, knowing, based on a history of igniting fires under similar conditions, that such operation would emit sparks, hot debris, particles, and other materials that would travel onto and enter Plaintiffs' property.

58. Defendants had actual knowledge that operating trains under extreme fire


SINGLETON SCHREIBER, LLP
1050 SW 6th Avenue, Suite 1100
Portland, OR 97204
Tel. (619) 771-3473

conditions on July 2, 2025, including red flag warnings, would reasonably and foreseeably cause fire, smoke, ash, and other materials to spread to and enter upon Plaintiffs' property.

59. Defendants had knowledge from prior incidents, including the 2016 Mosier derailment, the 2023 Tunnel 5 Fire, the 2025 Rowena Fires, and other regional wildfires, that railroad operations in the Columbia River Gorge and surrounding area under dry, windy conditions create a high risk of fire spread to adjacent properties.

60. As described above, Defendants owed Plaintiffs numerous duties regarding the operation, inspection, maintenance, and repair of the Subject Train, so as to ensure that it was in proper condition and safe to operate on July 2, 2025, without causing unnecessary peril to life and limb and/or without igniting multiple wildfires.

61. Defendants also owed Plaintiffs numerous duties regarding the inspection and maintenance of their Tracks, including managing and controlling vegetation on or near their Tracks, so as to ensure that their Tracks were in proper condition and safe to have Trains run on them from before July 2, 2025, without causing unnecessary peril to life and limb and without continuing Defendants' pattern and practice of igniting wildfires in the Columbia River Gorge and surrounding areas.

62. The approximate area of Defendants' trespass onto Plaintiffs' property, includes, but is not limited to the area depicted in the map below:

///
///
///


SINGLETON SCHREIBER, LLP
1050 SW 6th Avenue, Suite 1100
Portland, OR 97204
Tel. (619) 771-3473




**Map 1.** *Approximate area of the Cold Springs Fires*

***<u>COUNT 1: Intentional Trespass</u>***

63. Defendants engaged in a pattern of intentionally breaching these duties, thereby causing the Cold Springs Fires to ignite and spread out of control, and to intrude onto and into Plaintiffs' real and personal property on July 2, 2025. Notwithstanding that Defendants knew or should have known their Trains were igniting numerous wildfires in the Cold Springs area on July 2, 2025, and as alleged above having been contemporaneously informed on July 2, 2025 that its Subject Train was starting fires, Defendants continued to operate their trains even though it was substantially certain Defendants' Subject Train would ignite additional wildfires, including in this instance as many as six (6) separate fires. Union Pacific's own crew admitted noticing smoke rising near the Subject Train's tracks as the train continued along its route, and the train was not stopped until a firefighter responding to the scene of the earlier fire starts formally requested a track shutdown. Once Defendants knew their Subject Train was actively igniting fires, their deliberate decision to keep operating it made each additional ignition—and the resulting invasion of

Plaintiffs' real and personal property—substantially certain.

64. The fire, smoke, ash, hot debris, and other materials from Defendants' railroad operations physically entered upon and invaded Plaintiffs' real and personal property without authorization.

65. Plaintiffs did not grant permission for any fire, smoke, ash, hot debris, or other materials to enter their properties.

66. Defendants' conduct resulted in a direct, unlawful interference with Plaintiffs' exclusive possessory interests in their property.

67. As a direct and proximate result of Defendants' intentional trespass, Plaintiffs presently suffer, and will continue to suffer substantial harms, including, but not limited to, the damages alleged herein.

68. Defendants' intentional trespass as alleged herein was committed with malice and/or with reckless and outrageous indifference to the rights of Plaintiffs and others. Defendants' decision to intentionally operate their Trains under extreme fire conditions, knowing that such operation would reasonably and foreseeably cause fire and other materials to enter upon Plaintiffs' property, demonstrates conscious indifference to Plaintiffs' property rights and safety. Plaintiffs each seek damages on an individual basis in amounts as shall be proven at trial. Plaintiffs also seek damages equal to twice the amount of their property and economic damages to the extent allowed under ORS 477.089(2)(b).

69. Defendants acted with malice by intentionally engaging in conduct that they knew would substantially certainly result in unlawful entry upon Plaintiffs' property, despite having no right or authorization to do so. The circumstances of Defendants' trespass, including their knowledge of extreme fire conditions and their deliberate decision to proceed with operations on July 2, 2025, despite the obvious risk of fire spread, demonstrate conduct that is socially unacceptable and warrants punishment. Plaintiffs are entitled to punitive damages for Defendants' intentional trespass in an amount sufficient to punish Defendants and deter similar conduct.


SINGLETON SCHREIBER, LLP
1050 SW 6th Avenue, Suite 1100
Portland, OR 97204
Tel. (619) 771-3473

***COUNT 2: Negligent Trespass***

70. Plaintiffs reallege and incorporate by reference the foregoing allegations as if fully set forth herein.

71. As set forth in detail above, Defendants owed Plaintiffs a duty of care in the operation, maintenance, and inspection of their railroad operations to prevent harm to persons and property in the vicinity of their railroad operations.

72. Defendants had a duty to exercise reasonable care in their railroad operations to prevent fire, smoke, debris, and other materials from their operations from entering upon Plaintiffs' property without permission.

73. This duty arose from Defendants' knowledge that railroad operations in the Columbia River Gorge and surrounding area under dry, windy conditions create substantial risks of fire spread to adjacent properties. Notwithstanding this knowledge and history of past fires, Union Pacific engaged in a pattern of operating trains despite information that the Subject Train was sparking repeated wildfires in the Columbia River Gorge and surrounding area on July 2, 2025. Defendants breached their duty of care to the Plaintiffs on or about July 2, 2025, through the negligent acts and omissions described above in the First Claim for Relief, including but not limited to:

a. Failing to properly inspect, maintain, and repair the Subject Train to prevent the emission of sparks and hot debris;
b. Failing to manage vegetation on or near their Tracks to prevent fire hazards;
c. Operating the Subject Train under extreme fire conditions without adequate precautions;
d. Failing to implement and follow proper wildfire mitigation protocols;
e. Failing to use appropriate detection and warning systems;
f. Failing to promptly respond to and contain the fire once ignited.

74. As a direct and proximate result of Defendants' negligent conduct, fire, smoke, ash,


SINGLETON SCHREIBER, LLP
1050 SW 6th Avenue, Suite 1100
Portland, OR 97204
Tel. (619) 771-3473

hot debris, and other materials from Defendants' railroad operations entered upon and invaded Plaintiffs' real and personal property without authorization or permission.

75. The entry of fire and related materials onto Plaintiffs' property constituted a trespass that was caused by Defendants' negligence in the operation and maintenance of their railroad.

76. Plaintiffs did not consent to the entry of fire, smoke, ash, or other materials onto their property, and Defendants had no right or privilege to cause such materials to enter Plaintiffs' property.

77. The trespass was reasonably foreseeable as a natural and probable consequence of Defendants' negligent railroad operations under the extreme fire conditions present on July 2, 2025.

78. Defendants knew or should have known that their negligent conduct would reasonably and foreseeably result in the spread of fire and related materials to adjacent properties, including the Plaintiffs' property.

79. As a direct and proximate result of Defendants' negligent trespass, Plaintiffs presently suffer, and will continue to suffer, substantial harms, including, but not limited to, the damages alleged herein.

80. The negligent conduct of Defendants as alleged herein was committed with malice and/or with reckless and outrageous indifference to a highly unreasonable risk of harm to the Plaintiffs and others. The Plaintiffs each seek damages on an individual basis in amounts as shall be proven at trial. The Plaintiffs also seek damages equal to twice the amount of their property and economic damages to the extent allowed under ORS 477.089(2)(b). Again, the Subject Train ignited multiple wildfires, despite knowledge of dangerous conditions, and continued operating the Subject Train despite the knowledge that the Subject Train was sparking additional wildfires in the Columbia River Gorge and surrounding areas before, on, and after July 2, 2025. For these reasons, Plaintiffs are entitled to punitive damages for Defendants' negligent trespass in an amount


SINGLETON SCHREIBER, LLP
1050 SW 6th Avenue, Suite 1100
Portland, OR 97204
Tel. (619) 771-3473

sufficient to punish Defendants and deter similar conduct in the future.

***COUNT 3: Trespass from Ultrahazardous Activity***

81. Plaintiffs reallege and incorporate by reference the foregoing allegations as if fully set forth herein.

82. In the alternative to Plaintiffs' negligence claims, and without conceding that the exercise of reasonable care could have prevented the Cold Springs Fires, Defendants' pattern and practice of operating their trains in the Columbia River Gorge and surrounding area and history of igniting fires under extreme fire conditions, particularly trains operating with inadequate fire prevention measures, constitutes an ultrahazardous activity for which Defendants are strictly liable regardless of the degree of care exercised.

83. Railroad operations in fire-prone areas such as the Columbia River Gorge, as conducted by Defendants here, are ultrahazardous activities due to the following:

a. High degree of risk: Railroad operations in extreme fire conditions pose a high degree of risk of fire ignition and spread to adjacent properties;

b. Likelihood of great harm: The potential harm from railroad-caused fires includes destruction of homes, businesses, and natural resources over thousands of acres;

c. Inability to eliminate risk: Despite the exercise of reasonable care, the risk of fire ignition from railroad operations cannot be completely eliminated, as evidenced by the recurring pattern of railroad-caused fires in the Columbia River Gorge;

d. Not common usage: Operating trains under red flag or near red flag fire conditions without adequate fire prevention measures is not a matter of common usage but represents an extraordinary risk-taking activity;

e. Inappropriate location: Operating trains without proper fire prevention measures in the fire-prone Columbia River Gorge during extreme fire


SINGLETON SCHREIBER, LLP
1050 SW 6th Avenue, Suite 1100
Portland, OR 97204
Tel. (619) 771-3473

conditions is inappropriate to the location;

f. Harm outweighs community value: The risk of catastrophic wildfire damage to the community outweighs any immediate transportation benefits when proper fire prevention measures are not implemented.

84. Because Defendants were engaged in an ultrahazardous activity, they are strictly liable for the trespass that resulted from their railroad operations, regardless of the level of care exercised. The ultrahazardous character of Defendants' activity is established not by the operation of a railroad in the abstract, but by Defendants' specific conduct as alleged here – continuing to operate trains that Defendants knew were actively sparking wildfires, near red-flag conditions, and without adequate fire-prevention measures, including against a backdrop of igniting numerous wildfires in the Columbia River Gorge and surrounding area over the course of several years.

85. The fire, smoke, ash, hot debris, and other materials from Defendants' ultrahazardous railroad operations beginning on or before July 2, 2025, entered upon and invaded the Plaintiffs' real and personal property without authorization or permission.

86. Plaintiffs did not consent to the entry of fire, smoke, ash, or other materials onto their property, and Defendants had no right or privilege to cause such materials to enter Plaintiffs' property.

87. The trespass was a direct and natural result of the ultrahazardous nature of Defendants' railroad operations under the extreme fire conditions present on July 2, 2025.

88. As a direct and proximate result of Defendants' trespass, Plaintiffs presently suffer, and will continue to suffer substantial harms, including, but not limited to, the damages alleged herein.

89. Under the doctrine of strict liability for ultrahazardous activities, Defendants are liable for all damages proximately caused by their ultrahazardous railroad operations, regardless of fault.

90. Defendants' engagement in ultrahazardous railroad operations as alleged herein


SINGLETON SCHREIBER, LLP
1050 SW 6th Avenue, Suite 1100
Portland, OR 97204
Tel. (619) 771-3473

was conducted with malice and/or with reckless and outrageous indifference to a highly unreasonable risk of harm to Plaintiffs and others. The Plaintiffs each seek damages on an individual basis in amounts as shall be proven at trial. Plaintiffs also seek damages equal to twice the amount of their property and economic damages to the extent allowed under ORS 477.089(2)(b). As set forth herein, Defendants' Subject Train ignited multiple wildfires, despite knowledge of dangerous conditions, and continued operating the Subject Train despite knowledge that the Subject Train was sparking additional wildfires in the Columbia River Gorge and surrounding areas in June and July 2025. For these reasons, Plaintiffs are entitled to punitive damages for Defendants' reckless conduct in engaging in ultrahazardous railroad operations under extreme fire conditions, in an amount sufficient to punish Defendants and deter similar conduct.

## THIRD CLAIM FOR RELIEF - NUISANCE

91. Plaintiffs reallege and incorporate the foregoing allegations as if fully set forth herein.

92. On July 2, 2025, Plaintiffs were the owners and lawful occupiers of real properties in the area to which the Cold Springs Fires spread as a result of Union Pacific's pattern of operating their Trains in the Columbia River Gorge and surrounding area without taking adequate precautions to avoid igniting a series of wildfires.

93. Plaintiffs had a possessory interest in real property that the Cold Springs Fires damaged and destroyed, including the right to quiet use and enjoyment.

94. As more fully described above, despite the propensity of their trains to ignite fires, and the inadequacy of maintenance of the Subject Train and Tracks, on July 2, 2025, under hazardous weather conditions, Defendants negligently, recklessly, intentionally, and unlawfully operated their Subject Train in Umatilla County, including in violation of Oregon law and federal regulations.

95. Defendants' conduct was negligent, reckless, intentional, and in violation of statutory duties, constituting culpable conduct sufficient to support a private nuisance claim.


SINGLETON SCHREIBER, LLP
1050 SW 6th Avenue, Suite 1100
Portland, OR 97204
Tel. (619) 771-3473

96. Defendants' negligent and unlawful operation of the Subject Train on July 2, 2025, which resulted in the Cold Springs Fires, created and/or permitted conditions to exist that substantially interfered with Plaintiffs' use and enjoyment of their property.

97. Defendants' negligent and unlawful operation of the Subject Train on July 2, 2025, resulting in the Cold Springs Fires, created conditions and/or permitted conditions to exist that:

a. Were harmful to health;
b. Offended the senses;
c. Obstructed the free use of property, so as to substantially interfere with the comfortable enjoyment of life and property; and
d. Substantially interfered with Plaintiffs' comfortable use and enjoyment of their homes and property.

98. These conditions, including flames, smoke, embers, ash, odors, gases, and airborne particles, substantially interfered with Plaintiffs' right to quiet enjoyment of their property in a way unique to each Plaintiff.

99. The interference with Plaintiffs' use and enjoyment of their property was not a single, momentary event but a continuing condition that persisted well after the flame front passed. Smoke, ash, soot, and toxic particulate matter from the Cold Springs Fires settled on and permeated Plaintiffs' real and personal property—including the interiors of surviving structures, soil, vegetation, water sources, and personal belongings—leaving a persistent toxic residue. That residue is readily re-suspended and recirculated into the air when disturbed, causing repeated and ongoing exposure to noxious and unhealthful conditions. In the days and weeks following the fires, Plaintiffs were further subjected to continuing smoke, haze, odors, degraded air quality, and contamination of their water supply resulting from the fires and related suppression efforts, all of which substantially and continuously interfered with their comfortable use and enjoyment of their property.

100. An ordinary person of reasonable sensibility would be substantially annoyed and


SINGLETON SCHREIBER, LLP
1050 SW 6th Avenue, Suite 1100
Portland, OR 97204
Tel. (619) 771-3473

disturbed by these conditions.

101. These conditions interfered with Plaintiffs' individual right to quiet use and enjoyment of their property in a way that was unreasonable under the circumstances and that caused Plaintiffs harm different in kind from any inconvenience experienced by the general public.

102. At no time did Plaintiffs consent to Defendants' actions in creating these conditions.

103. Defendants realized or should have realized that the objectionable conditions posed an unreasonable risk of fire that could spread and cause harm to Plaintiffs' persons, interests, and property.

104. The gravity and duration of the harm caused to Plaintiffs substantially outweighed the utility of Defendants' conduct.

105. Whatever benefit Defendants realized by their behavior was outweighed by the harm its operations imposed on Plaintiffs.

106. Defendants could have avoided or reduced the harm to Plaintiffs by implementing reasonable fire prevention measures, proper vegetation management, and appropriate operational restrictions during extreme fire conditions. Defendants could have stopped the Subject Train after the ignition of a single wildfire; yet, they continued to operate their trains, sparking numerous additional fires in the Cold Springs area.

107. Defendants' negligent, reckless, intentional, and/or unlawful behavior substantially interfered with Plaintiffs' use and enjoyment of their real and personal property.

108. The harms caused by Defendants were unique to each Plaintiff and different from damages suffered by other members of the general public.

109. Plaintiffs suffered particular harm to their property and possessory interests that was different in kind from the general inconvenience and concern felt by the broader community.

110. Defendants' culpable conduct was the direct and proximate cause of the substantial and unreasonable interference with the Plaintiffs' use and enjoyment of their property.

111. As a direct and proximate result of Defendants' creation of private nuisance,


SINGLETON SCHREIBER, LLP
1050 SW 6th Avenue, Suite 1100
Portland, OR 97204
Tel. (619) 771-3473

Plaintiffs suffered, and will continue to suffer damages, including, but not limited to, the injuries and damages as herein alleged.

112. Plaintiffs each seek damages on an individual basis in amounts as shall be proven at trial. Plaintiffs also seek damages equal to twice the amount of their property and economic damages to the extent allowed under ORS 477.089(2)(b). Defendants' creation of a private nuisance as alleged herein was committed with malice and/or with reckless and outrageous indifference to the rights and safety of Plaintiffs and others. Defendants' decision to operate the Subject Train under extreme fire conditions, despite knowing the substantial risk of creating harmful conditions that would interfere with Plaintiffs' use and enjoyment of their property, demonstrates conscious indifference to Plaintiffs' rights.

113. Plaintiffs are entitled to punitive damages for Defendants' creation of a private nuisance in an amount sufficient to punish Defendants and deter similar conduct, subject to the distribution requirements of ORS 31.735. Defendants acted with reckless and outrageous indifference by creating conditions that were harmful to health, offensive to the senses, and substantially interfered with Plaintiffs' comfortable enjoyment of their property, despite their knowledge that such conditions would foreseeably result from their conduct. As set forth herein, Defendants' Subject Train ignited multiple wildfires, despite knowledge of dangerous conditions, and continued operating the Subject Train despite knowledge that the Subject Train was sparking additional wildfires in the Columbia River Gorge and surrounding area in June and July 2025. The gravity of harm caused by Defendants' conduct, combined with their knowledge of the risks and their failure to take reasonable precautions, demonstrates conduct that is socially unacceptable and warrants punishment through punitive damages.

## <u>FOURTH CLAIM FOR RELIEF – BATTERY</u>

114. Plaintiffs reallege and incorporate by reference the foregoing allegations as if fully set forth herein.

115. Given the frequency of wildfires in the Columbia River Gorge and surrounding


SINGLETON SCHREIBER, LLP
1050 SW 6th Avenue, Suite 1100
Portland, OR 97204
Tel. (619) 771-3473

area, Defendants knew or should have known that the toxic smoke, ash, and debris released from wildfires were substantially certain to cause bodily contact, personal injury, damage (e.g., smoke inhalation and asthma), or harmful and offensive contact with the Plaintiffs.

116. From on or before July 2, 2025, Defendants knew the Subject Train was prone to spark repeated wildfires that would spread in the Columbia River Gorge and surrounding areas. By July 2, 2025, Defendants knew that operating the Subject Train without proper maintenance would result in the Subject Train shooting sparks long distances – as much as 20 feet – and igniting numerous wildfires that would combine and destroy property in the Columbia River Gorge and surrounding area. Defendants knew these wildfires would cause catastrophic damage to homeowners and residents in the Columbia River Gorge and surrounding areas along Defendants' tracks.

117. Defendants further knew or should have known that smoke, ash, and debris from wildfires may contain toxic materials, including asbestos, heavy metals, and chemicals from burned buildings—materials and contents—and vehicles, as well as particle pollution, volatile organic compounds (VOCs), polycyclic aromatic hydrocarbons (PAH), furans, and nitrogen oxides.

118. As of July 2, 2025, Plaintiffs were physically present in the Cold Springs Fires areas and were subjected to contact by smoke, ash, and debris from the Cold Springs Fires. As set forth herein, Union Pacific intentionally operated its railway line with knowledge that its trains were sparking wildfires along the Columbia River. Multiple separate ignition points were identified in close proximity to the Cold Springs Fires. Union Pacific must have known their Trains and Tracks were igniting a series of wildfires and nonetheless intentionally continued its operations, with knowledge that one or more of these wildfires would spread toxic and offensive particles that would cause harmful and offensive bodily contact, personal injury damage (e.g., smoke inhalation and asthma), or harmful and offensive contact with Plaintiffs. Union Pacific's knowledge is borne out by statements from the Union Pacific Crew operating the Subject Train. Indeed, the crew


SINGLETON SCHREIBER, LLP
1050 SW 6th Avenue, Suite 1100
Portland, OR 97204
Tel. (619) 771-3473

admitted seeing smoke along the Subject Train's route, yet the train continued to operate and ignite additional fires until a firefighter on scene demanded a track shutdown, and Union Pacific personnel thereafter resisted inspection of, and moved, the implicated locomotives. Continuing to operate a train Defendants knew was actively igniting wildfires made harmful and offensive contact with Plaintiffs by smoke, ash, and toxic particulate substantially certain.

119. Smoke from the Fires is believed to have contained toxic materials, including asbestos, heavy metals, and chemicals from burned buildings—materials and contents—and vehicles, as well as particle pollution, volatile organic compounds (VOCs), polycyclic aromatic hydrocarbons (PAH), furans, and nitrogen oxides. As a result of Defendant's intentional conduct and Plaintiffs' exposure to these toxins, Plaintiffs aspirated and had, and continue to have, toxic smoke, ash, and debris touch them without their consent.

120. Smoke, ash, and debris from wildfires can settle on surfaces inside non-destroyed homes, buildings, and vehicles, as well as settling on external features such as soil, gravel, pavers, gardens, trees, and bushes, leaving a toxic layer. Wildfire smoke can also permeate personal items not destroyed in the fire, saturating these items with toxic materials as well as infiltrating soil. That happened with the smoke from the Cold Springs Fires. This continuous trespass resulted in repeated battery, as toxic particles are easily recirculated with any type of disturbance, causing additional harmful and offensive contact, all without the Plaintiffs' consent.

121. Plaintiffs did not authorize Defendants' harmful and intentional offensive contact, which has actually and reasonably offended Plaintiffs' sense of personal dignity. Plaintiffs did not consent to the bodily contact, physical injury, damage (e.g., smoke inhalation and asthma), or harmful and offensive contact.

122. As a direct and proximate result of Defendants' battery, Plaintiffs have and continue to experience harms including, but not limited to, pain and suffering, mental anguish, and emotional distress.

123. Plaintiffs each seek damages on an individual basis in amounts as shall be proven


SINGLETON SCHREIBER, LLP
1050 SW 6th Avenue, Suite 1100
Portland, OR 97204
Tel. (619) 771-3473

at trial. They also seek damages equal to twice the amount of their property and economic damages to the extent allowed under ORS 477.089(2)(b). Defendants' battery, as alleged herein, was committed with malice and/or with reckless and outrageous indifference to the rights and safety of Plaintiffs and others. Defendants intentionally operated the Subject Train despite knowing that it was igniting multiple separate fires in extreme fire conditions on July 2, 2025. Defendants' decision to continue operating the Subject Train, despite the substantial certainty that doing so would create harmful conditions and devastate Plaintiffs' lives, demonstrates conscious indifference to Plaintiffs' rights.

124. Plaintiffs are entitled to punitive damages for Defendants' battery in an amount sufficient to punish Defendants and deter similar conduct, subject to the distribution requirements of ORS 31.735. As set forth herein, Defendants' Subject Train ignited multiple wildfires in dangerous fire conditions in the Columbia River Gorge and surrounding area in June and July 2025. Further, on the date of the Cold Springs Fire's ignition, July 2, 2025, Defendants continued operating the Subject Train, despite knowing that the Subject Train was igniting fires and that Defendants had ignited other fires before in similar conditions. By continuing to operate the Subject Train despite that knowledge, Defendants recklessly and outrageously created conditions harmful to health and offensive to the senses. The gravity of harm caused by Defendants' battery, combined with their knowledge of the risks and their failure to take reasonable precautions, demonstrates conduct that is socially unacceptable and warrants punishment through punitive damages.

**FIFTH CLAIM FOR RELIEF – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

125. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

126. From on or before July 2, 2025, Defendants possessed actual knowledge of the following facts that made severe emotional distress substantially certain to result from their

conduct.

127. Defendants knew their Subject Train had ignited multiple wildfires along the Columbia River Gorge and surrounding area. Defendants further knew the Subject Train was emitting sparks and igniting fires on July 2, 2025, as evidenced by multiple eyewitness accounts of multiple fire starts along their tracks.

128. Defendants knew that wildfire ignition in residential areas would force mass evacuations, destroy homes, and cause severe psychological trauma to residents who would witness the destruction of their property and community.

129. Defendants' conduct constituted an extraordinary transgression of the bounds of socially tolerable conduct in the following respects:

a. Defendants deliberately continued hazardous railroad operations under red flag fire warning conditions/dangerous fire conditions and had a history of igniting wildfires under extreme conditions, including on July 2, despite knowing their trains were actively igniting multiple wildfires. Union Pacific was contemporaneously informed on July 2, 2025, that its Subject Train was igniting fires; its own crew admitted noticing smoke along the route; yet, the Subject Train did not stop until approximately eight minutes after the first ignition, and only after a firefighter on the scene of the earlier fire starts formally requested a track shutdown.

b. Upon information and belief, after observing the Subject Train ignite at least six separate fires on July 2, 2025, Defendants demonstrated conscious indifference to public safety by continuing operations without implementing adequate fire prevention measures, including by not stopping the Subject Train after the first wildfire ignition.

c. Having ignited multiple fires over several years in the Columbia River Gorge and surrounding areas, Defendants knew that continuing to operate the Subject


SINGLETON SCHREIBER, LLP
1050 SW 6th Avenue, Suite 1100
Portland, OR 97204
Tel. (619) 771-3473

Train in fire prone rural communities – where residents had limited evacuation options – was substantially certain to cause severe emotional trauma from wildfire emergencies.

d. Defendants engaged in a systematic pattern of conduct, igniting two major fires just 21 days apart in the same rail corridor, demonstrating deliberate disregard for the devastating consequences to the affected communities.

e. Despite having substantial corporate resources to implement fire prevention measures, Defendants chose to continue dangerous operations that they knew would cause severe community-wide trauma.

130. Defendants knew or should have known with substantial certainty that their conduct would cause severe emotional distress for at least the following reasons:

a. Previous railroad fires in the Columbia River Gorge and surrounding area had caused widespread evacuation trauma and community displacement.

b. On July 2, 2025, Defendants witnessed the immediate panic and terror of the residents forced to evacuate their homes as fires spread. Nonetheless, they continued operating Trains that were shooting sparks through July 2, 2025, displacing additional Plaintiffs and destroying Plaintiffs' property.

131. Defendants knew that residents, like Plaintiff Heidi Lloyd, who was alone and asleep when the fire began and barely escaped being surrounded by flames that caused her breathing difficulties, represented the type of severe trauma that would inevitably result from their continued operations.

132. Defendants understood that destroying numerous homes and commercial properties would cause severe and lasting emotional trauma to the communities Defendants were entrusted to serve.

133. Defendants' extreme and outrageous conduct was the direct and proximate cause of Plaintiffs' severe emotional distress. The timing, location, and circumstances of the emotional


SINGLETON SCHREIBER, LLP
1050 SW 6th Avenue, Suite 1100
Portland, OR 97204
Tel. (619) 771-3473

trauma directly correlate with Defendants' pattern of igniting wildfires in residential communities in the Columbia River Gorge and surrounding area.

134. As a direct and proximate result of Defendants' intentional conduct, Plaintiffs have suffered and continue to suffer severe emotional distress that exceeds what a reasonable person would be expected to endure:

a. Plaintiffs experienced intense fear, panic, and terror during emergency evacuation from their homes as fires approached.

b. Certain Plaintiffs were trapped in their homes surrounded by flames as the Cold Springs Fires approached and required rescue by firefighters, causing severe psychological trauma.

c. Plaintiffs were forced to witness the complete destruction of their homes, personal belongings, and community, causing profound grief and anguish.

d. The fires destroyed irreplaceable family heirlooms, 50 years of family history, and lifetime accumulations of personal property with unique sentimental value.

135. Ongoing Psychological Symptoms: Plaintiffs continue to suffer from:

a. Post-traumatic stress disorder and flashbacks;

b. Sleep disturbances and nightmares related to the Fires;

c. Anxiety and depression requiring professional treatment;

d. Fear and hypervigilance regarding future fire risks;

e. Inability to concentrate or perform normal daily activities; and

f. Loss of sense of safety and security in their community.

136. Plaintiffs' severe emotional distress has manifested in physical symptoms including, but not limited to:

a. Smoke inhalation injuries from the evacuation process;

b. Stress-related physical ailments including headaches and gastrointestinal distress;


SINGLETON SCHREIBER, LLP
1050 SW 6th Avenue, Suite 1100
Portland, OR 97204
Tel. (619) 771-3473

c. Sleep disorders and appetite loss; and

d. Cardiovascular symptoms from acute stress responses during evacuation.

137. The severity of Plaintiffs' emotional distress has required and continues to require professional mental health treatment, counseling, and psychiatric medication, demonstrating the extraordinary nature of the psychological harm.

138. As a direct and proximate result of Defendants' intentional infliction of emotional distress, Plaintiffs have suffered and will continue to suffer damages including:

a. Past and future medical expenses for psychological and psychiatric treatment;

b. Past and future costs of counseling and therapy;

c. Medication costs for treatment of depression, anxiety, and PTSD;

d. Loss of enjoyment of life and normal activities;

e. Pain and suffering related to the emotional trauma;

f. Lost wages and diminished earning capacity due to inability to work; and

g. Impairment of family relationships and social functioning.

139. For the reasons set forth above, the conduct of Defendants as alleged herein was committed with malice and/or with reckless and outrageous indifference to a highly unreasonable risk of harm to the health, safety, and welfare of communities in the Columbia River Gorge and surrounding area, including Plaintiffs. Plaintiffs are therefore entitled to twice the amount of their property and economic damages to the extent allowed under ORS 477.089(2)(b).

140. Plaintiffs also are entitled to punitive damages against Defendants in an amount to be determined by a jury. Defendants are liable for punitive damages in an amount sufficient to punish their extreme and outrageous conduct and deter similar future conduct, subject to the distribution requirements of ORS 31.735.

a. Continuing hazardous operations despite witnessing the severe trauma caused by the first fire;

b. Failing to implement adequate safeguards after observing the devastating

emotional impact on the community; and

c. Prioritizing corporate profits over the psychological well-being of vulnerable rural residents.

**SIXTH CLAIM FOR RELIEF – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

141. As set forth above, Defendants owed Plaintiffs a duty of care in the operation, maintenance, and inspection of their railroad operations.

142. Defendants had a duty to operate their Subject Train and maintain their Tracks in a manner that would not create unreasonable risks of harm to persons and property in the vicinity of their railroad operations.

143. Defendants breached their duty of care through their pattern of negligent acts and omissions described above, which directly caused the Cold Springs Fires.

144. Defendants' negligent conduct included, but was not limited to, the failures alleged in the First Claim for Relief, including inadequate inspection and maintenance of the Subject Train, failure to manage vegetation, and operation under extreme fire conditions without adequate precautions on or around July 2, 2025. That serious emotional distress arises from the physical injuries certain Plaintiffs sustained in the Cold Springs Fires and from the immediate peril to their persons and safety during the fire and evacuation, as alleged below, and not solely from damage to Plaintiffs' property.

145. As a direct and proximate result of Defendants' negligence, Plaintiffs suffered serious emotional distress, including but not limited to:

a. Severe fear and panic during the fire evacuation;

b. Anxiety and terror from witnessing the approaching fire and fearing for their lives and safety;

c. In addition and in the alternative, distress from witnessing the destruction of their property and community;


SINGLETON SCHREIBER, LLP
1050 SW 6th Avenue, Suite 1100
Portland, OR 97204
Tel. (619) 771-3473

d. Ongoing mental anguish from displacement and loss of their home and personal belongings;

e. Post-traumatic stress disorder and flashbacks related to the fire experience;

f. Depression and grief from the loss of personal property with sentimental value;

g. Anxiety and fear about future fire risks;

h. Sleep disturbances and nightmares related to the traumatic experience;

i. Difficulty concentrating and performing daily activities;

j. Loss of their beloved pets;

k. Lack of clean water as a result of the wildfire and related suppression efforts; and

l. Strain on family relationships and social functioning.

146. Plaintiffs' emotional distress has been severe and of such intensity and duration that no reasonable person could be expected to endure it without suffering lasting psychological harm. As alleged above, certain Plaintiffs sustained physical injuries as a direct result of the Cold Springs Fires – including smoke inhalation, respiratory distress, and exacerbation of asthma and other medical conditions – and those physical injuries themselves gave rise to and caused emotional distress. In addition, and independently, Defendants' conduct invaded Plaintiffs' legally protected interests in their real and personal property through trespass and nuisance, providing a separate legal source supporting recovery of emotional-distress damages.

147. The emotional distress has substantially interfered with Plaintiffs' ability to carry out their normal daily activities, maintain employment, and enjoy life.

148. The emotional trauma has required and continues to require professional mental health treatment and counseling. The physical injuries certain Plaintiffs sustained in the Cold Springs Fires – including smoke inhalation, asthma, and respiratory distress – themselves gave rise to and caused emotional distress. The additional stress-related physical manifestations described below are pled as further and alternative consequences of Defendants' conduct and do not limit


SINGLETON SCHREIBER, LLP
1050 SW 6th Avenue, Suite 1100
Portland, OR 97204
Tel. (619) 771-3473

the foregoing:

a. Smoke inhalation, asthma, and respiratory distress;

b. Headaches and physical symptoms related to stress and trauma; and

c. Other physical manifestations of the emotional distress, including but not limited to sleep disorders, loss of appetite, and stress-related physical ailments.

149. Defendants knew or should have known that their negligent operation of railroad equipment in extreme fire conditions would foreseeably cause severe emotional distress to nearby residents like Plaintiffs.

150. It was reasonably foreseeable that igniting a single wildfire, let alone a series of wildfires, through negligent railroad operations would cause severe emotional trauma to persons forced to evacuate their homes and witness the destruction of their property and community.

151. The type of emotional distress suffered by Plaintiffs was a natural and probable consequence of Defendants' negligent conduct. Alternatively, Plaintiffs' emotional distress arose from Defendants' breach of duties specifically designed to protect persons like Plaintiffs from the type of harm that occurred, creating a special relationship sufficient to support direct recovery for emotional distress.

152. Plaintiffs seek damages for their severe emotional distress, including compensation for mental health treatment, therapy costs, and pain and suffering, in amounts to be proven at trial. As a direct and proximate result of Defendants' negligent infliction of emotional distress, Plaintiffs have suffered and will continue to suffer damages, including but not limited to:

a. Past and future medical expenses for psychological and psychiatric treatment;

b. Past and future costs of counseling and therapy;

c. Loss of enjoyment of life and normal activities;

d. Pain and suffering related to the emotional trauma;

e. Loss of consortium and impairment of family relationships;

f. Medication costs for treatment of depression, anxiety, and related conditions;


SINGLETON SCHREIBER, LLP
1050 SW 6th Avenue, Suite 1100
Portland, OR 97204
Tel. (619) 771-3473

g. Lost wages and diminished earning capacity due to inability to work; and

h. Other economic and non-economic damages related to emotional distress.

153. Plaintiffs each seek damages on an individual basis in amounts as shall be proven at trial. Plaintiffs also seek damages equal to twice the amount of their property and economic damages to the extent allowed under ORS 477.089(2)(b). Defendants' negligent infliction of emotional distress as alleged herein was committed with malice and/or with reckless and outrageous indifference to the emotional well-being and safety of Plaintiffs and others. Defendants' conduct in operating their Subject Train under extreme fire conditions, knowing that such operation would foreseeably cause severe emotional trauma to nearby residents forced to evacuate their homes, demonstrates conscious indifference to the mental health and emotional welfare of the Plaintiffs. Defendants acted with reckless and outrageous indifference by engaging in conduct that they knew would cause severe emotional distress to persons like Plaintiffs, including the terror of fleeing from an approaching wildfire and the anguish of witnessing the destruction of their home and community.

154. Plaintiffs are entitled to punitive damages for Defendants' negligent infliction of emotional distress in an amount sufficient to punish Defendants and deter similar conduct, subject to the distribution requirements of ORS 31.735. As set forth herein, Defendants' Subject Train ignited multiple wildfires, despite knowledge of dangerous conditions, and continued operating the Subject Train despite knowledge that it was sparking additional wildfires in the Columbia River Gorge and surrounding area in June and July 2025. The severity of the emotional trauma inflicted upon Plaintiffs, combined with Defendants' knowledge that their conduct would foreseeably cause such trauma, demonstrates conduct that is socially unacceptable and warrants punishment through punitive damages.

///


SINGLETON SCHREIBER, LLP
1050 SW 6th Avenue, Suite 1100
Portland, OR 97204
Tel. (619) 771-3473

## PRAYER FOR RELIEF

Plaintiffs seek the following:

(1) Just and adequate monetary compensation for all injuries and damages suffered on an individual basis in amounts to be proven at trial;

(2) Reasonable attorney's fees and costs to the extent permitted under ORCP 68B and/or any other statutory, legal, or equitable basis;

(3) Twice the amount of their economic and property damages, to the extent permitted under ORS 477.089(2)(b);

(4) Non-economic damages in the amount the jury concludes is appropriate; and

(5) Punitive damages in the amount the jury concludes is appropriate;

(6) Any other relief as the Court shall deem just and proper, either in law or equity, all according to proof.

## DEMAND FOR JURY TRIAL

The Plaintiffs demand a trial by jury on all issues so triable.

DATED: October 2, 2026

By: /s/ *Rich Barker*

Rich Barker (OSBN: 261423)
rbarker@singletonschreiber.com
SINGLETON SCHREIBER, LLP
*Attorneys for Plaintiffs*